DECISION
Defendant-appellant, Virgil E. Johnson, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas, pursuant to a jury verdict finding appellant guilty of two counts of rape, two counts of kidnapping, and one count of gross sexual imposition. Appellant also appeals from the trial court's determination that he should be adjudicated a sexual predator for purposes of R.C. Chapter 2950.
The charges against appellant arose out of unrelated attacks upon two different victims, Bertha Saint Clair and Chrystal Finch, in November 1999.
Saint Clair testified that she met appellant when he approached her at a convenience store. They had a conversation which was prolonged as he walked partway home with her. A few days later, Saint Clair saw appellant again when he joined her on her front porch and smoked marijuana with her. He did not stay long on this occasion. The next time Saint Clair saw appellant was in the early morning hours of November 2, 1999. Saint Clair was inside watching television when she heard a horn and a loud automobile engine revving outside. She heard a knock on the door and recognized appellant. She allowed appellant inside, and he began showing her a bag full of automobile accessories and speaking about his car.
Saint Clair was somewhat uncomfortable with appellant in her home because, on the two previous occasions, she had seen him during the daytime and she did not consider that she knew him very well. She therefore told appellant that she was planning on going out, hoping that he would take the hint and leave. As they spoke, appellant asked her for a hug and blocked her from leaving the apartment. Appellant then pushed her down on her bed, but Saint Clair was able to wrestle herself free and stand up. Appellant grabbed her again and began threatening that he would hurt Saint Clair or her daughter if she screamed or told anyone. Saint Clair began to scream but then appellant hit her and put his hand on her neck, while continuing to threaten her. Appellant told her that, if she screamed, he would make sure that she would never scream again. Appellant hit her again in the face "really hard" and continued to threaten her. At this point Saint Clair began crying and no longer resisted appellant. He pulled her pants partway down and had intercourse with her. During intercourse, appellant told Saint Clair that he understood that she did not want to have a baby with him, and that he would not get her pregnant. He then withdrew and ejaculated onto the bed covers. Appellant pulled his pants up and told Saint Clair not to tell anyone or he would kill her. He also told her that he knew what Saint Clair's daughter looked like and would hurt her if anything was said about his conduct. Appellant then left.
Saint Clair testified that, as soon as appellant left, in a state of hysteria, she went to a convenience store to use the payphone and call her daughter's father. Saint Clair then spoke to a police officer at the convenience store, who took her to a female officer who was present. The female officer advised Saint Clair to immediately go to the hospital, but Saint Clair was too upset and afraid to go at that time. She did, on the female officer's advice, preserve her clothing and otherwise try to preserve evidence that might be used in an eventual rape prosecution. The next morning, at around eight o'clock, she went to the hospital and spent the day there receiving a rape exam. She had suffered some bruises, but no serious injuries.
Saint Clair testified that several days after the rape, on November 13, 1999, she was shown a photo array by detective Tom Palsgrove, of the Columbus Division of Police, and immediately selected appellant's picture from the array. Saint Clair then identified appellant in open court as her assailant and as the person she had identified out of the photo array.
Detective Palsgrove testified for the prosecution that he interviewed Saint Clair at Grant Hospital and took her statement on the morning after the rape. She described the blanket upon which appellant had ejaculated, and the detective went to her apartment to secure this and other evidence. These, along with the rape kit collected at the hospital, were submitted for lab analysis. After initial analysis revealed the presence of semen on the blanket and pants taken from Saint Clair's apartment, DNA samples were taken to compare with the blood drawn from appellant. The DNA analysis was inconclusive. Palsgrove confirmed that he showed Saint Clair a photo array, from which she immediately selected appellant.
The prosecution also presented the evidence of Lisa Kilgore, a registered nurse employed in the Grant Medical Center Emergency Room. Kilgore testified that she was a trained sexual assault nurse examiner. Because of her qualifications, she examined Bertha Saint Clair on the day she came into the hospital after the rape. As part of the usual sexual assault examination, she collected swab samples from Saint Clair's body to obtain possible semen samples, and noted various bruises to Saint Clair's shoulder and chest. There was no bruising or trauma to the vaginal area. Kilgore testified that in the many sexual assault cases she had examined, only a few have shown bruising to the vaginal area.
Appellant testified on his own behalf regarding his relationship with Bertha Saint Clair, whom he initially knew as Cee Cee. He agreed that he initially met her at a convenience store at Parsons Avenue and Columbus Street, and that they had struck up a conversation and he then walked her home. He testified, however, that on that occasion, when they reached her house, they smoked marijuana together and had consensual sex. Appellant further testified that he and Saint Clair had consensual sex on several occasions thereafter, but the last time he had sex with her was between October 15, 1999 and October 17, 1999.
The prosecution also presented the testimony of the second victim, Chrystal Finch. She testified that she first met appellant while making a call at a payphone on November 14, 1999. Appellant was riding a bike, and she asked him to come into her apartment to warm up. Appellant was being nice, and Finch was depressed because her boyfriend had just been incarcerated, and she felt as though she needed to talk to someone. They conversed for a while in her apartment and eventually had consensual sex. Appellant left the next day. In the morning, before appellant left, he asked Finch for $105 to obtain a rental car. She reluctantly gave him the money on the promise that he would give her a ride wherever she needed to go. That evening, appellant picked her up from work in the rental car and took her home and dropped her off.
Finch did not see appellant again until November 29, 1999. On that date, she was getting out of the shower when she heard a car horn blowing outside. She looked out the blinds and recognized appellant, and was somewhat upset because two weeks had gone by and he had not given her a ride to work as he had promised. Finch questioned appellant about his previous visit to the apartment, and about her later discovery that a locked upstairs bedroom door had been dismantled and some tapes taken. Appellant became angry when questioned about this and Finch asked him to leave. Appellant stated that he would not leave until Finch accepted him as her man. She stated that she already had a boyfriend, but appellant grabbed her and pinned her to the couch. Finch was crying and struggling with him, and noticed that her neck was bleeding on the couch. She asked him to please get off of her so she could attend to the bleeding. When she tried to get to the door, appellant blocked her path and then pinned her to the couch again. When Finch heard her neighbor ringing the doorbell, appellant told her that if she screamed he would kill her. He was tightening his hands around her neck tighter and tighter every time she resisted. At one point he squeezed her tightly enough that she could not breathe and she briefly passed out. When she came to, she continued to struggle with appellant but he eventually forced himself on her and ejaculated in her vagina. Afterwards, appellant got up and began banging his head on the closet door and walking in circles around the apartment. He begged her not to tell anyone and said he would do anything if she didn't tell. When Finch tried to use her cell phone to call 9-1-1, he grabbed the phone from her and left with her keys.
Finch then walked over to her neighbor's apartment and called the police. The police arrived almost immediately and drove her to the hospital. At the hospital, she was given a sexual assault examination and photographs were taken of her bruises. In court, Finch identified various photographs and pointed out different bruises caused by appellant's assault. Finch then identified appellant in open court as her assailant.
Detective Andrew Kirk Mitchell, of the Columbus Division of Police, testified regarding his investigation of Chrystal Finch's rape. He first interviewed her in the treating room at Grant Hospital on the morning of the rape. Finch appeared very upset and was crying, and initially had trouble telling Mitchell about the assault. Mitchell observed some bruising and scratches, including a scratch on the left side of Finch's neck. Finch's pants were removed by personnel at the hospital and turned into the police property room as evidence, as well as a pillow taken from her apartment. Detective Mitchell did not request a DNA comparison on samples taken from Finch's pants or other evidence because subsequent interviews with appellant indicated that appellant admitted having sex with Finch, but claimed that it was consensual.
Appellant, as with Bertha Saint Clair, claimed that he had a consensual sexual relationship with Finch, including three separate consensual sexual encounters involving intercourse. Appellant denied, however, having sex with Finch on November 29, 1999.
The jury returned a guilty verdict on all counts in the indictment. The court imposed a sentence of six years on each rape count, three years on each kidnapping count, and twelve months on the gross sexual imposition count, with the rape counts to be served consecutively, but concurrently with all other sentences. The court also determined appellant to be a sexual predator subject to the registration and notification requirements of R.C. Chapter 2950.
Appellant has timely appealed and brings the following assignments of error:
First Assignment of Error
 The judgment of the trial court is contrary to the weight of the evidence.
Second Assignment of Error
 The trial court's decision finding Appellant to be a "sexual predator" as defined by 2950.01(E) is contrary to the weight of the evidence.
Appellant's first assignment of error asserts that the verdict of the trial court was against the manifest weight of the evidence. When a court of appeals reviews a judgment of the trial court on the basis that that verdict is against the weight of the evidence, the appellate court essentially sits as a "thirteenth juror" and assesses the fact finder's resolution of conflicting testimony. State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. * * *
State v. Martin (1983), 20 Ohio App.3d 172, 175.
The sole argument advanced by appellant upon appeal to support that his conviction was against the manifest weight of the evidence is simply that the jury should have given a greater credibility to his own version of events and disregarded the testimony of the victims and other prosecution witnesses. The weight to be given the evidence and the credibility of witnesses are primarily issues for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Without excessive reiteration of the facts, the testimony of the victims, as outlined above, was detailed, coherent, and both internally and circumstantially consistent. We find no reason in the record to disturb the jury's assessment of the relative credibility of the witnesses heard at trial.
Appellant's first assignment of error is accordingly overruled.
Appellant's second assignment of error asserts that the trial court's finding that appellant should be classified a sexual predator under R.C. Chapter 2950 is also contrary to the weight of the evidence. A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). The state bears the burden of establishing by clear and convincing evidence that the defendant is likely to re-offend. R.C. 2950.01(E);State v. Cook (1998), 83 Ohio St.3d 404, 407.
 * * * Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal. * * *
(Emphasis sic.) Cross v. Ledford (1954), 161 Ohio St. 469, 477. In assessing the evidence supporting or refuting the likelihood of re-offense, the trial court should consider the following factors under R.C. 2950.09(B)(2):
 In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
Reviewing the evidence presented upon which the court could base its sexual predator finding, in light of the statutorily enumerated factors, we find there was sufficient evidence before the trial court to support by the clear and convincing standard a determination that appellant should be adjudicated a sexual predator. Under R.C. 2950.09(B)(2)(a), appellant's age of only eighteen at the time of the offenses indicates an early inability to refrain from criminal conduct which raises a legitimate inference as to appellant's inability to refrain from criminal sexual conduct in the future. Pursuant to R.C. 2950.09(B)(2)(d), appellant's offenses, although separate, in the aggregate involved multiple victims. Under R.C. 2950.09(B)(2)(i), both victims testified that appellant, during the commission of the offenses, displayed cruelty and made threats of additional violence, including threatening to kill the victims and, in Saint Clair's case, her daughter. Finally, under the catch-all provision of R.C. 2950.09(B)(2)(j), we note that appellant demonstrated a general pattern of insinuating his way into the victim's lives, only to return later, invade their homes, and forcefully rape them. We also note that appellant, less than a month after committing the first offense for which he was charged, recidivated by finding and assaulting a new victim.
We accordingly find that the judgment of the trial court, concluding that appellant should be classified as a sexual predator, was supported by clear and convincing evidence. Appellant's second assignment of error is overruled.
In summary, neither appellant's conviction nor his adjudication as a sexual predator were against the manifest weight of the evidence, and, therefore, appellant's first and second assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
 ___________ DESHLER, J.
BRYANT, P.J., and BOWMAN, J., concur.